UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

NASSER ZAIN YAFAI and AHMED NASSER ZAIN YAFAI,

Plaintiffs,

– against –

MARCO RUBIO, United States Secretary of State; UNITED STATES DEPARTMENT OF STATE; EMBASSY OF THE UNITED STATES OF DJIBOUTI; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; JOSEPH EDLOW, United States Citizenship and Immigration Services Director; and MARKWAYNE MULLIN, Secretary of the Department of Homeland Security,

Defendants.

**MEMORANDUM & ORDER**

24-CV-5748 (ERK)

KORMAN, *J.*:

This case arises from a U.S. citizen's attempt to secure an immigrant visa for his son, a process which so far has spanned over twenty years and three continents. Plaintiff Nasser Zain Yafai ("Nasser"), a U.S. citizen, and Plaintiff Ahmed Nasser Zain Yafai ("Ahmed"), his non-citizen son, bring this action against United States Secretary of State Marco Rubio, the United States Department of State ("DOS"), the Embassy of the United States in Djibouti, United States Citizenship and Immigration

Services ("USCIS"), USCIS Director Joseph Edlow, and Department of Homeland Security ("DHS") Secretary Markwayne Mullin.[1] Plaintiffs challenge the denial of Ahmed's immigrant visa and the delay in adjudicating Ahmed's Form I-601 application to have his grounds of ineligibility for admission waived. Defendants have moved to dismiss all of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## I. BACKGROUND

### a. The Visa Application Process

An American citizen seeking to have an alien relative permanently stay in the United States begins by filing a Form I-130 petition with USCIS in order to establish that they have a "qualifying relationship" with that relative. 8 C.F.R. § 204.1(a)(1); *I-130, Petition for Alien Relative*, USCIS, https://www.uscis.gov/i-130 (last visited August 25, 2026); *Ahmed v. Bitter*, No. 23-CV-189 (NGG) (RJL), 2024 WL 22763, at *1 (E.D.N.Y. Jan. 2, 2024). Once the I-130 petition is approved and pre-processed, the U.S. Embassy with jurisdiction over the applicant's place of residence interviews the applicant in person. *See Ahmed*, 2024 WL 22763, at *1. Following the interview, a United States consular officer decides whether to issue or deny the visa. *Id.* If the decision is a denial, the consular officer must "inform the applicant of the provision of law or implementing regulation on which the refusal is based."

[1] Pursuant to Fed. R. Civ. P. 25(d), successor officers have been automatically substituted as parties.

22 C.F.R. § 42.81(b). As relevant here, an alien is ineligible for admission when "by fraud or willfully misrepresenting a material fact, . . . [they have previously] sought to procure . . . a visa . . . ." 8 U.S.C. § 1182(a)(6)(C)(i). An applicant who has been deemed inadmissible may seek a waiver of their grounds of inadmissibility by filing a Form I-601 application with USCIS. *See* 8 C.F.R. § 1212.7; *I-601, Application for Waiver of Grounds of Inadmissibility*, USCIS, https://www.uscis.gov/i-601 (last visited August 25, 2026).

**b. Factual Background**

The following facts are drawn from the Plaintiffs' First Amended Complaint and accepted as true. In 2005, days before Ahmed turned eighteen years old, Nasser filed an I-130 petition on behalf of Ahmed. *See* ECF No. 10-2, Ex. P; ECF No. 10 ¶¶ 25, 27. In this petition, Nasser listed Ahmed's name as "Ahmed Mohamed Ali Saleh" rather than his real name, "Ahmed Nasser Zain Yafai." ECF No. 10 ¶¶ 16, 27. Plaintiffs concede that Nasser filed this petition for Ahmed under a different name, indicating that Ahmed was his stepson. *See id.* ¶ 27; ECF No. 20, at 2. Ahmed's I-130 petition was approved on November 20, 2005, and Ahmed appeared for his visa interview at the United States Embassy in Yemen thereafter. ECF No. 10 ¶¶ 28–29. During Ahmed's visa interview, it was revealed that he was Nasser's biological son, rather than his stepson, a fact that was later confirmed through DNA testing. *Id.* ¶ 29; ECF No. 10-2, Ex. L. This resulted in Ahmed's initial I-130 petition being returned to USCIS, which reaffirmed its approval of the petition on

January 25, 2010. ECF No. 10 ¶ 32. Due to civil unrest in Yemen and a change in Ahmed's priority category, his next visa interview was not until June 11, 2018, this time at the United States Embassy in Djibouti. *Id.* ¶¶ 33–37. On June 3, 2021, at the latest,[2] the Embassy in Djibouti informed Ahmed that he would not receive a visa pursuant to Section 212(a)(6)(C)(i) of the Immigration and Nationality Act ("INA"), which renders inadmissible aliens who have sought to procure a visa by willfully misrepresenting a material fact. *See* ECF No. 10 ¶ 48; ECF No. 10-2, Ex. HH; 8 U.S.C. 1182(a)(6)(C)(i).[3] The Embassy specified that the denial was based upon the determination that Ahmed's 2006 visa application under an identity "he had no legitimate claim to" constituted a material misrepresentation. ECF No. 10 ¶ 50; ECF No. 10-2, Ex. HH. The Embassy further explained that this misrepresentation was material because it concealed that Ahmed did not have a valid passport, as required under INA § 212(a)(7)(A) for him to be eligible for admission to the United States. ECF No. 10 ¶ 50; ECF No. 10-2, Ex. HH; *see also* 8 U.S.C. § 1182(a)(7)(A)(i). On March 10, 2023, Plaintiffs filed a Form I-601 application

[2] A sworn declaration provided by Defendants states that DOS's database reflects that Ahmed was informed that he was ineligible for a visa on November 21, 2019. *See* ECF No. 19-2 ¶ 13. Plaintiffs contest that Ahmed was notified prior to June 3, 2021. *See* ECF No. 10 ¶ 49. This has no bearing on the outcome of Defendants' Motion to Dismiss.

[3] Plaintiffs' Complaint alleges that the Embassy in Djibouti stated that Ahmed was inadmissible under INA § 212(a)(6)(A)(i) rather than INA § 212(a)(6)(C)(i), *see* ECF No. 10 ¶ 48, but this is plainly contradicted by a copy of the communication attached to Plaintiffs' Complaint. *See* ECF No. 10-2, Ex. HH.

seeking to waive Ahmed's ground of inadmissibility. ECF No. 10 ¶ 63; ECF No. 10-2, Ex. NN. This application was pending when the First Amended Complaint was filed and—to the Court's knowledge—it remains pending to this day. ECF No. 10 ¶ 65. Plaintiffs allege that both the denial of Ahmed's visa and USCIS's delay in adjudicating his Form I-601 application are driven by a broader scheme to "stymy and deny Yemeni visa applications" irrespective of their merit. *See* ECF No. 10 ¶ 66.

## II. LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In addition to the facts alleged in the complaint, a court considering a Rule 12(b)(6) motion may consider "documents attached to the complaint as exhibits or incorporated in it by reference [and] matters of which the court may take judicial notice," including the administrative record. *See Saget v. Trump*, 345 F. Supp. 3d 287, 293 (E.D.N.Y. 2018); *Yu Mei Chen v. Nielsen*, 363 F. Supp. 3d 333, 340 (E.D.N.Y. 2019); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). A district court may also take judicial notice of "information publicly announced on a party's website, as

long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (internal quotation marks and citations omitted); *see also Aydemir v. Garland*, No. 22-CV-100 (PAC), 2022 WL 4085846, at *3 & n.3 (S.D.N.Y. Sept. 6, 2022) (taking judicial notice of processing times on USCIS's website).

"Dismissal . . . for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate" a claim. *Ford v. D.C. 37 Union Loc. 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (internal quotation marks and citation omitted). As with Rule 12(b)(6) motions, a court considering a Rule 12(b)(1) motion must accept the facts alleged in the complaint as true. *Kehoe v. United States*, No. 24-CV-00806 (HG), 2025 WL 996539, at *2 (E.D.N.Y. Mar. 20, 2025). A plaintiff asserting subject matter jurisdiction exists bears the burden of proving this by a preponderance of the evidence. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

## III. DISCUSSION

### a. Challenges to the Denial of Ahmed's Visa

Plaintiffs challenge the denial of Ahmed's visa under the Administrative Procedure Act, 5 U.S.C. §§ 701–06 ("APA")—arguing that it was contrary to law—as well as under a breach of contract theory. *See* ECF No. 10 ¶¶ 106–47. Defendants counter that, under the doctrine of consular nonreviewability, the decision to deny

Ahmed's visa is not subject to judicial review, and that Ahmed's visa application did not create a contract. *See* ECF No. 19-1, at 8–14.

Because the "admission and exclusion of foreign nationals is a 'fundamental sovereign attribute,'" exercised by the Executive Branch, courts cannot review a consular officer's discretionary decision to exclude a non-citizen "'unless expressly authorized by law.'" *See Dep't of State v. Muñoz*, 602 U.S. 899, 907–08 (2024) (first quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018); then quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). This principle is known as the doctrine of consular nonreviewability. *Id.* at 908. It is settled law that the INA "does not authorize judicial review of a consular officer's denial of a visa." *Id.*; *see also Alhariri v. Blinken*, No. 22-CV-1036 (NGG) (TAM), 2025 WL 1434317, at *5 (E.D.N.Y. May 19, 2025), *appeal docketed sub nom. Alhariri v. Rubio*, No. 25-1565 (2d Cir. June 24, 2025). The doctrine of consular nonreviewability is non-jurisdictional, meaning that a court's determination that a claim is subject to the doctrine implicates potential dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) rather than denial for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Trump v. Hawaii*, 585 U.S. 667, 682 (2018); *Muñoz*, 602 U.S. at 908 n.4 (citing *Trump v. Hawaii*, 585 U.S. at 682–83); *Chen v. Blinken*, No. 23-CV-2279 (NGG), 2025 WL 606221, at *6 (E.D.N.Y. Feb. 25, 2025), *aff'd sub nom. Chen v. Rubio*, 158 F.4th 393 (2d Cir. 2025).

Courts have recognized two narrow exceptions to the doctrine of consular nonreviewability. First, when denial of a visa "allegedly burdens the constitutional rights of a U. S. citizen," courts may review whether a "facially legitimate and bona fide reason" was provided for denying the visa. *See Trump v. Hawaii*, 585 U.S. at 703 (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)); *see also Alhariri*, 2025 WL 1434317, at *5. Second, some courts have held that consular nonreviewability does not preclude review of challenges to a consular officer's "authority to take or fail to take an action as opposed to a decision taken within the consul's discretion." *See Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997). Courts recognizing this second exception cabin their review to the failure to adjudicate visa applications—a non-discretionary duty mandated by law. *See, e.g.*, *Ahmed*, 2024 WL 22763, at *6; *cf. Am. Acad. of Religion v. Chertof*, 463 F.Supp.2d 400, 421 (S.D.N.Y.2006) ("[T]he wide latitude given [to] the Executive to grant or deny a visa application—a discretion bounded only by the U.S. Constitution and Congressional mandate—does not include the authority to refuse to adjudicate a visa application."). Though they may lack the authority to ignore visa applications, consular officers do have the authority to deny visa applications and are afforded broad discretion in doing so. *See Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978); *Reid v. Immigr. & Naturalization Serv.*, 492 F.2d 251, 256 (2d Cir. 1974), *aff'd*, 420 U.S. 619 (1975). Thus, even if the Second Circuit recognized an exception to the doctrine of consular nonreviewability for acts in excess of authority—which

to date it has not—a consular officer's decision to deny a visa would not qualify for the exception. *See Abdo v. Tillerson*, No. 17 Civ. 7519 (PGG), 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019) (collecting cases); *Nurjahan v. U.S. Dep't of State*, No. 22-CV-2692 (ARR), 2023 WL 2931581, at *2 (E.D.N.Y. Apr. 13, 2023). Neither a consular officer's denial nor the bases for that denial are subject to judicial review, even if they are erroneous, arbitrary, or contrary to agency regulations. *See London v. Phelps*, 22 F.2d 288, 290 (2d Cir. 1927); *Gogilashvili v. Holder*, No. 11-CV-01502 (RRM), 2012 WL 2394820, at *5 (E.D.N.Y. June 25, 2012); *Aquino v. Immigration and Customs Enforcement,* No. 09-CV-0912 (ENV), 2009 WL 1406625, at *2 (E.D.N.Y. May 18, 2009); *Dong v. Ridge*, No. 02 Civ. 7178(HB), 2005 WL 1994090, at *5 (S.D.N.Y. Aug. 18, 2005).

Plaintiffs argue that the exception to consular nonreviewability for actions taken in excess of authority applies because they "are not challenging [the] decision of the consular officer, but rather the action taken in excess of [] Defendants' authority." ECF No. 20, at 14. Plaintiffs' brief is not a model of clarity on this issue. They seem to argue that the Embassy was not empowered to find that Ahmed's use of a fake name in 2006 concealed the fact he was inadmissible for lack of a valid passport—which is why the Embassy deemed it a "material" misrepresentation. *See* ECF No. 20, at 16. In Plaintiffs' view, the INA does not explicitly empower consular officers to assess whether a foreign passport is "valid." *See id.* Setting aside the dubious merits of this argument, this is precisely the kind of challenge that is

precluded under the doctrine of consular nonreviewability. Second-guessing the denial of Ahmed's visa—a denial the consular officer had authority to make under the INA, 8 U.S.C. § 1201(g)—is the type of review the doctrine of consular nonreviewability prohibits. *See Muñoz*, 602 U.S. at 908.

Nor can Plaintiffs bypass the doctrine of consular nonreviewability by characterizing their claim as one for breach of contract. Plaintiffs fail to identify a single case holding that a contract is created by the Department of State's acceptance of fees linked to a visa application. The *Harriott v. Ashcroft* case which Plaintiffs cite for the proposition that "by accepting fees, [DHS and DOS] become bound to a duty of performance, as would be implied in a contractual agreement," ECF No. 20, at 18, is unavailing on this point. In *Harriott*, the district court held only that the government had a statutory duty under the INA, rather than one created by contract, to perform the non-discretionary duty of acknowledging a petitioner's citizenship. *See Harriott v. Ashcroft*, 277 F. Supp. 2d 538, 543 (E.D. Pa. 2003). Courts considering the argument put forward by Plaintiffs—that a visa application creates an enforceable contract—have rejected it. *See Alhariri*, 2025 WL 1434317, at *12; *cf. Mosquera v. MTI Retreading Co.*, No. 15-cv-1062, 2017 WL 6766310, at *9 (W.D. Mich. Nov. 2, 2017), *aff'd*, 745 F. App'x 568 (6th Cir. 2018). Permitting plaintiffs to obtain judicial review of discretionary consular decisions by alleging breach of contract would "fly in the face of the doctrine of consular nonreviewability." *Alhariri*, 2025 WL 1434317, at *12.

Furthermore, even if Ahmed's visa application *did* create a contract, sovereign immunity would bar a contract claim against Defendants in this instance. Under the doctrine of sovereign immunity, the United States' consent to being sued is a prerequisite for jurisdiction. *See Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Thus, claims against the federal government or its employees may proceed only where the United States has expressly waived its immunity from suit. *See Lane v. Pena*, 518 U.S. 187, 196 (1996). Plaintiffs argue that the Little Tucker Act, 28 U.S.C. § 1346(a)(2), waives sovereign immunity for breach of contract claims against the United States. *See* ECF No. 20, at 17. However, the Little Tucker Act "authorize[s] only actions for money judgments and not suits for equitable relief against the United States." *Richardson v. Morris*, 409 U.S. 464, 465 (1973); *see also Khanom v. Kerry*, 37 F. Supp. 3d 567, 576 (E.D.N.Y. 2014). This is because the jurisdiction of district courts under the Act is concurrent with that of the Federal Court of Claims, which has no power to grant equitable relief. *See Richardson*, 409 U.S. at 465–66.

Here, Plaintiffs seek declaratory judgement and specific performance as relief for their breach of contract claim. *See* ECF No. 10, at 29; ECF No. 20, at 19. Both declaratory judgement and specific performance are equitable remedies. *See Abbott Lab'ys v. Gardner*, 387 U.S. 136, 155 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *United States v. Bedford Assocs.*, 657 F.2d 1300, 1314 (2d Cir. 1981). Thus, even if Ahmed's visa application created a

contract, Plaintiffs' claim premised on a breach of the duty of good faith and fair dealing would be barred by the doctrine of sovereign immunity since they do not seek monetary damages.

Defendants' motion to dismiss the APA and breach of contract claims related to the denial of Ahmed's visa is granted pursuant to Fed. R. Civ. P 12(b)(6).

**b. Challenges to the Delay in Processing Ahmed's Form I-601 Application**

Separate from their challenges to the denial of Ahmed's visa, Nasser and Ahmed also challenge USCIS's delay in adjudicating Ahmed's I-601 application to waive his grounds of ineligibility. ECF No. 10 at ¶¶ 138–154. The INA provides the Attorney General with discretion to waive the grounds of inadmissibility for the child of a U.S. citizen who is deemed inadmissible because they previously made a material misrepresentation while seeking a visa. *See* 8 U.S.C. § 1182(i)(1). Seeking to obtain such a waiver, Ahmed filed the appropriate Form I-601 application on March 10, 2023. ECF No. 10 ¶ 63. To the Court's knowledge, Ahmed's Form I-601 application remains pending to this day. *See id.* ¶ 65. Plaintiffs allege an APA claim for undue delay and request that the Court, pursuant to the Mandamus Act, 28 U.S.C. § 1361, order USCIS to adjudicate Ahmed's waiver application "within 30 days." *Id.* at 29.

**i. Undue Delay Challenge Under the APA**

Under the APA, courts reviewing agency actions should "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Nevertheless, Congress may preclude judicial review of certain agency actions under the APA by promulgating statutes demonstrating a clear intent to withhold the power of judicial review from courts, pursuant to 5 U.S.C. 701(a). *See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 156 (1970); *Mullin v. Doe*, 146 S. Ct. 2121, 2133–34 (2026). The section of the INA providing for I-601 waivers states that "[n]o court shall have jurisdiction to review a decision or action by the Attorney General regarding [such] a waiver." 8 U.S.C. § 1182(i)(2). Courts considering a near-identical provision applicable to I-601A "unlawful presence" waivers are divided on whether the prohibition on reviewing "a decision or action" applies to judicial review of USCIS's delays in adjudicating waivers.[4] *See Lovo v. Miller*, 107 F.4th 199, 206–10 (4th Cir. 2024); *Soni v. Jaddou*, 103 F.4th 1271, 1272–73 (7th Cir. 2024), *reh'g denied*, No. 23-3220, 2024 WL 3683115 (7th Cir. Aug. 6, 2024); *Dong v. Mayorkas*, No. 23-CV-9224 (ARR), 2024 WL 3498508, at

[4] Cases on this issue focus on the availability of judicial review for delays in adjudicating I-601A "unlawful presence" waivers made available by 8 C.F.R. § 212.7 pursuant to 8 U.S.C. § 1182(a)(9)(B)(v). Section 1182(a)(9)(B)(v)'s language prohibiting judicial review of I-601A waivers is near-identical to that in 8 U.S.C. § 1182(i)(2) prohibiting review of I-601 waivers. The holdings in the I-601A cases are therefore equally applicable to cases involving I-601 waivers for prior misrepresentations.

*2–4 (E.D.N.Y. July 22, 2024); *Chen v. Mayorkas*, 736 F. Supp. 3d 151, 157–59 (E.D.N.Y. 2024), *vacated and remanded sub nom. Chen v. Noem*, No. 24-2058-cv, 2025 WL 1466205 (2d Cir. May 22, 2025). The Second Circuit has not ruled on this issue, and the parties each point to opposing decisions from this district reaching their preferred conclusion.

In *Dong v. Mayorkas*, Judge Ross held that because the word "action" includes "the process of doing something," and because the INA prohibits judicial review of an "action . . . regarding a waiver," courts lack jurisdiction to review delays in the processing of I-601A waivers. *See Dong*, 2024 WL 3498508, at *3–4. Specifically, *Dong* held that the placing of an application in line for review under USCIS's first-in-first-out processing policy is an "action" which is challenged when a plaintiff seeks to have their application processed more quickly. *Id.* at *3.

Conversely, in *Chen v. Mayorkas*, Judge Chen held that the plain reading of the INA's jurisdiction-stripping provision precludes judicial review of "action by the Attorney General" but not inaction. *See Chen*, 736 F. Supp. 3d at 158–59. As a result, *Chen* held that USCIS's failure to adjudicate an I-601A application was reviewable. *See id.* On the merits, however, *Chen* held that a delay of three years in processing an I-601A application could not support an undue delay claim under the APA, for reasons that would also be applicable in this case. *See id.* at 160–62. The court in *Chen* also held that a mandamus claim pled in conjunction with an APA undue delay claim was mooted by the court's jurisdiction over the undue delay claim

since this represented the availability of an adequate alternate remedy to mandamus. *Id.* at 162.

I agree with the conclusion reached by Judge Ross in *Dong*. The effect of the word "regarding" in the INA's jurisdiction-stripping provision is to broaden the scope of the prohibition on judicial review to include challenges to the process through which waiver decisions are adjudicated. *See Patel v. Garland*, 596 U.S. 328, 338–39 (2022) (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018)) (stating, with respect to a different jurisdiction-stripping provision in the INA, that "the use of 'regarding' 'in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject.'"). As Defendants explain, USCIS processes I-601 applications in the order it receives them, applying a "first-in-first-out" principle. *See* ECF No. 19-1, at 17; *Case Processing Times*, USCIS, https://egov.uscis.gov/processing-times (last visited August 25, 2026). The test to determine whether an agency action is unreasonably delayed asks, among other factors, whether "the time agencies take to make decisions [is] governed by a rule of reason." *Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotation marks omitted); *see also Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 84 (2d Cir. 2013), *as amended* (Apr. 23, 2013). Thus, assessing Plaintiffs' claim for undue delay requires an inquiry into whether the "first-in-first-out" principle is a rule of reason. But of course, placing applicants in line in

the order their applications are received is an action by USCIS "regarding a waiver," which courts may not review under the INA.

It is extremely concerning that Ahmed's Form I-601 application has been pending for over three years. To add insult to injury, Defendants do not even attempt to explain the reasons for the delay in adjudicating Ahmed's Form I-601 application. Instead, Defendants merely point to the damning statistic that "USCIS . . . adjudicates 80% of I-601s within 33 months." ECF No. 19-1, at 21. In effect, they take the Kafkaesque position that so long as USCIS consistently burdens all applicants with years-long delays, the delays are not undue. Nevertheless, as Judge Easterbrook—writing for the Seventh Circuit—put it, "it is the duty of the Executive Branch to address this operational problem; our duty is to abide by the law as enacted, including the prohibition on judicial review." *Soni*, 103 F.4th at 1273.

**ii. Mandamus Relief**

Plaintiffs' invocation of the Mandamus Act also does not avail them. *See* ECF No. 10, at 28–29. Where the INA strips courts of jurisdiction to review agency action, litigants may not evade that restriction by styling their challenge as a mandamus claim. *See Delgado v. Quarantillo*, 643 F.3d 52, 55–56 (2d Cir. 2011); *Ansah v. Napolitano*, No. 12 Civ. 5205(PKC), 2013 WL 247984, at *3 (S.D.N.Y. Jan. 23, 2013) ("[N]either the Mandamus Act nor the APA (alone or together with the federal question statute) confers jurisdiction over a case before a district court where such review is prohibited by the INA[.]"). Moreover, even if there were

jurisdiction under the Mandamus Act in this case, Plaintiffs would still fail to state a claim for mandamus relief.[5] The portion of the INA expressing that "[i]t is the sense of Congress" that immigration benefits should be processed within 180 days is "merely precatory" and does not create a "clear right" to have Ahmed's Form I-601 application processed within a specified timeframe. *Cf. Poz v. Mayorkas*, No. 23-CV-7902 (DLI), 2024 WL 4309234, at *3 (E.D.N.Y. Sept. 26, 2024) (quoting 8 U.S.C. § 1571) (holding that applicants have no clear right to adjudications of I-601A applications within a specific timeline); *see also Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 226 (E.D.N.Y. 2021) (same regarding adjudication of Form I-130 petitions). Since the existence of a clear right is required for mandamus to be available, Plaintiffs' claim for mandamus relief would fail on the merits as well. *See Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989).

Defendants' motion to dismiss Plaintiffs' APA and mandamus claims related to Ahmed's Form I-601 application is granted pursuant to Fed. R. Civ. P 12(b)(1) and 12(b)(6).

## IV. CONCLUSION

Defendants' motion to dismiss the Complaint in its entirety is GRANTED pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

---

[5] The "better and more modern view" is that failure to satisfy the elements of a mandamus claim requires dismissal under Fed. R. Civ. P. 12(b)(6) rather than Fed. R. Civ. P. 12(b)(1). *See City of New York v. United States Postal Serv.*, 519 F. Supp. 3d 111, 127 n. 9 (E.D.N.Y. 2021).

**SO ORDERED.**

Brooklyn, New York
August 26, 2026

s/ Edward R. Korman
Edward R. Korman
United States District Judge